(128 So. 35)

CITY OF NEW ORLEANS v. SHREVEPORT OIL CO., Inc., et al.

No. 30101.

March 31, 1930.

Beard & O'Keefe, of New Orleans, for appellant.

Bertrand I. Cahn, City Atty., and Henry B. Curtis, both of New Orleans, for appellee.

THOMPSON, J.

This is a suit brought by the city of New Orleans against the Shreveport Oil Co., Inc.,

and three individuals, for $2,500 damages for the destruction of a water oak tree standing and growing between the curb and the sidewalk at No. 3331 St. Charles avenue.

The defendant oil company was the owner of the premises in front of which the tree stood, and on which was located and operated a filling station.

The defendants in answer denied cutting down the tree, but the evidence showed that the tree was cut by the employees of the oil company under the direction and supervision of the president of the company.

The trial judge, after hearing the evidence, gave judgment against the oil company for $750, and dismissed the demand against the three individuals as of nonsuit.

█ It appears that the oil company applied to the parking commission of the city of New Orleans for permission to cut and remove the tree, but the commission declined to issue the permit. Thereupon the oil company caused the tree to be cut down and removed despite the protest of the parking commission and its refusal to grant a permit.

We shall waste no time in discussing the liability of the oil company for removing the tree.

Its conduct was a trespass and a wanton disregard of the proprietary rights of the city and of the public.

█ The only question presented is as to the quantum of damages.

The tree was regarded as a large tree, being some two and a half feet in diameter.

It was about 54 years old, was sound and healthy, and had several years of life expectancy.

Much of the evidence introduced went to show the difference between the life of a water oak and other kinds of shade and ornamental trees, and more especially live oaks.

It was shown that the city had abandoned planting out water oaks because of the fact that with the improved drainage the live oak was preferable and had a longer life.

All of which, however, furnished no justification for cutting down a healthy water oak, nor could such evidence have very much weight in determining the damage sustained as the result of the wanton destruction of the tree.

The tree was the property of the city and the city had the moral as well as the legal right to have it preserved, in the interest and for the admiration and enjoyment of the public until it died a natural death.

The evidence shows that it would be impossible to put back in the same place or in any other selected place a tree of like character and like dimensions and growth.

The replacement value cannot, therefore, be accepted as the measure of value or damage the plaintiff and the public have sustained.

In the case of Tissot v. Telegraph Co., 39 La. Ann. 996, 3 So. 261, 4 Am. St. Rep. 248, the court allowed damages in the sum of $400 for cutting a number of branches off of some magnolia trees. In that case, the court found that the damage to the trees was daily being repaired, and in course of time the damage would hardly be susceptible.

In the instant case, the tree was entirely destroyed, and hence there can be no reparation from future growth.

The only compensation that can be given for the loss is the assessment of damages.

In such a case, a wide discretion is left primarily to the trial judge or to the jury before whom the case is tried.

In the light of the evidence, we fail to discover any abuse of this discretion by the trial judge.

The cases cited by the defendant relate to ordinary trespass on lands and the cutting of timber in the forests, and are clearly inapplicable to a case of wanton, not to say malicious, destruction of an ornamental or shade tree along the sidewalk and streets of a city.

The judgment appealed from is affirmed.