322 So.2d 326 (1975)
Theresa M. TURNER, Plaintiff-Appellant,
v.
SOUTHERN EXCAVATION, INC., Defendant-Appellant.
No. 12726.
Court of Appeal of Louisiana, Second Circuit.
November 6, 1975.
*327 Burnett, Harrison, Sutton & Walker by Bobby D. Sutton, Shreveport, for plaintiff-appellant.
Blanchard, Walker, O'Quin & Roberts by J. Edgerton Pierson, Jr., Shreveport, for defendant-appellant.
Before HALL, MARVIN and BURGESS, JJ.
HALL, Judge.
Plaintiff, Theresa M. Turner, sued defendant, Southern Excavation, Inc., for property damage and mental anguish and humiliation resulting from willful and wanton trespass by defendant on plaintiff's property. Judgment was rendered awarding plaintiff $1,500 for property damage, $3,500 for mental anguish and humiliation, and $75 for the cost of a survey of the property, or a total award of $5,075. Expert witness fees for plaintiff's two experts were set at $50 each.
Plaintiff appeals seeking an increase in the award for property damage and mental anguish and humiliation, and for an increase of the fee of each expert witness to $100. Defendant appeals seeking a reduction of the property damage and mental anguish award, and for disallowance of the cost of the survey.
The record shows that Mrs. Turner is the owner of a 100' × 100' corner lot located several miles north of Coushatta, Louisiana, in Red River Parish. There was located on the lot a small, rundown old house which is admittedly uninhabitable.
*328 Mrs. Turner resides in Shreveport and does not live on the property, nor had anyone else for some period of time prior to the alleged trespass beginning in October of 1973. The lot was covered with small trees and shrubbery, and there was a small concrete slab located thereon that possibly could be used as a foundation. Trees identified specifically as having been growing on the property included cedar, plum, peach and crepe myrtle. Many of the fruit trees were bearing.
The defendant corporation was doing some construction work for the Highway Department and in this connection leased property adjoining plaintiff's property as a site for an asphalt plant. Defendant also wanted to use plaintiff's lot for this purpose. Prior to going onto plaintiff's property, defendant's agent, Mr. Kilpatrick, contacted Mrs. Turner by telephone to ask if his company could level and clear the lot and use it as a storage place for its equipment and as a parking lot for its trucks while doing construction work in the area. Defendant may have offered a small rental fee at this time. Mrs. Turner declined the offer.
Sometime shortly thereafter defendant went onto the property of Mrs. Turner and with a bulldozer cleared away the trees and shrubs, most of the topsoil, and the concrete slab. The clearing operation was begun and continued despite the objections of Mrs. Turner and her relatives who lived in the area. Mr. Kilpatrick later met personally with Mrs. Turner at her sister's house, which was across the street from the lot. At this time defendant, through Mr. Kilpatrick, offered Mrs. Turner $300 for a lease of the property. Again, Mrs. Turner declined the offer and asked him to end his operation on her lot and remove his equipment.
Mrs. Turner's request was not honored. As a result, she employed a lawyer and filed this suit on January 26, 1974, some three months after the trespass began. Defendant continued to use Mrs. Turner's property for its own purposes until she filed a petition for and was granted a preliminary injunction in June, 1974, some seven months after the trespass began.
Mrs. Turner's lot is now stripped bare of vegetation. The trial judge found the actions of the defendant in clearing and bulldozing Mrs. Turner's property and continuing to use it over her objection, to be a willful and wanton trespass and in legal and moral bad faith. Although contested at trial, defendant does not now contest this aspect of the decision, which is manifestly correct. Thus, we are only faced with an issue of quantum.
Plaintiff seeks an increase in the award for property damage from $1,500 to $10,000, which she alleges is the amount it would take to restore the property to its prior condition. She also seeks to have the award for mental anguish increased to $15,000. Defendant seeks to have the $1,500 award reduced contending that where restoration costs are out of all proportion to the value of the property they do not provide an adequate method for measuring damages. Defendant argues that the proven diminution in market value of the property or the value of timber removed would be a correct method of evaluating damages in cases such as this, and that, in any event, property damages should not exceed the market value of the property. Defendant further argues that $3,500 is beyond the limits of discretion of the trial judge as reflected by the jurisprudence as compensation for plaintiff's mental anguish and humiliation.
Plaintiff visited her relatives weekly and viewed the property. She occasionally picked fruit from the fruit trees. Some of the trees were planted by her late husband and had sentimental value and some aesthetic value. The trees and shrubs, while not adding to the market value of the property, had value to the plaintiff. Because of defendant's actions, she was deprived of her enjoyment of her property. She was deprived of the pride and pleasure *329 of her property ownershiphowever meager the property may have been in pecuniary value. She had at least three unpleasant encounters with defendant's officers and employees and became upset emotionally over the situation on occasion. Defendant's trespass continued over her objection for several months and it was necessary for plaintiff to employ counsel, file suit, and obtain an injunction before the trespass was halted.
Defendant's trespass was deliberate, willful, wanton, illegal and forcible. It was done without any vestige of legal right and in legal and moral bad faith.
Replacement or restoration cost, before and after market value, and other usual methods of measuring property damage are of little value in measuring plaintiff's damages in this case. It is difficult to separate and make specific awards for property damage and for damage resulting from mental anguish and the like. Plaintiff's pecuniary loss is negligible but her damages are considerable.
Plaintiff offered testimony by an expert in the landscaping business who estimated the cost of replacing the topsoil and planting new trees and shrubs similar to those destroyed at over $8,900. Replacement cost is unrealistic as a measure of damages in this case as such cost is out of proportion with the value of the property, either in terms of market value or aesthetic or sentimental value. The lot's highest and best use is commercial, and the lot would not and could not be restored to its condition prior to the trespass.
Likewise, diminution in market value is not an appropriate measure of damages. There was testimony by an expert real estate appraiser that the property had a market value of $1,600 and, its highest and best use being commercial, the trees and shrubs added nothing to the market value. Yet, it cannot be denied that plaintiff's property was damaged. The trees and shrubs, which had aesthetic and sentimental value to plaintiff, were destroyed and cannot be replaced.
The courts of Louisiana have consistently recognized the right of property owners to recover damages done to the aesthetic value of their property. Curole v. Acosta, 303 So.2d 530 (La.App. 1st Cir. 1974); City of New Orleans v. Shreveport Oil Co., 170 La. 432, 128 So. 35 (1930). In Curole, an award of $750 was made to a plaintiff whose rural property was partially cleared when the defendant used it as a turnaround spot for his bulldozer which was clearing adjoining property. In the City of New Orleans case, one tree was destroyed and could not be replaced and the Supreme Court awarded $750. In that case, the Supreme Court made the distinction between ordinary and wanton trespasses. In each of these cases the destroyed trees and shrubs were found to be irreplaceable and their value to the owners not discernible on the open market. There, as here, neither the replacement costs nor the diminution in fair market value could reasonably be used to determine the amount to be awarded for the property damage.
Likewise, the courts of Louisiana have consistently awarded damages in cases of deliberate, forcible trespass for "invasion of property rights" and "mental anguish" or the like. The nature of such damages is most clearly described in Loeblich v. Garnier, 113 So.2d 95 (La.App. 1st Cir. 1959) as follows:
"The often found general statement that only compensatory and not punitive damages are awardable in Louisiana is in apparent conflict with the awards often made for damages for mental anguish and embarassment caused by an illegal and deliberate violation of property rights or for such violation itself irrespective of any pecuniary damage caused thereby (which damages, according to the definition above cited, are regarded in other states as exemplary or punitive damages). The key to resolution of this *330 conflict seems to be that in such circumstances such awards in Louisiana are regarded as compensatory for violations of a recognized property right, rather than punitory."
After citing numerous cases in which such awards were made, the court in Loeblich affirmed an award "for the wrongful and forceful invasion of plaintiffs' inherent property rights and for their mental anguish, humiliation, and embarrassment thereby sustained."
The foregoing quotation from Loeblich was cited with approval in a recent decision of this court, Campbell v. Gray, 294 So.2d 841 (La.App. 2d Cir. 1974). In Campbell, a small ditch was dug across the front of plaintiff's residential property by a contractor with no vestige of legal right to do so. Plaintiff was awarded $500 to restore his lawn and $1,500 for "humiliation, mental anguish and aggravation caused plaintiff by this willful trespass."
In Scarbrock v. Fowler, 317 So.2d 285 (La.App. 3d Cir. 1975) the court affirmed an award of $2,000 for the mental anguish of a plaintiff whose proven property damages amounted to $12. In Hayward v. Carraway, 180 So.2d 758 (La.App. 1st Cir. 1965) the plaintiff was awarded over $3,500 for the cost of restoring damaged property and $3,000 for mental anguish.
There is no hard and fast rule for measuring damages in a case of willful and wanton trespass and destruction of private property. The court must adopt an approach in each case that will do substantial justice between the parties. East v. Pan American Petroleum Corporation, 168 So. 2d 426 (La.App. 3d Cir. 1964); City of New Orleans v. Shreveport Oil Co., supra.
Under LSA-C.C. art. 1934, the trier of fact is vested with much discretion in fixing damages in a case of this kind. We find no abuse of that discretion in the total award of $5,000 as damages for injury to the property, mental anguish, inconvenience and the like, and invasion of and deprivation of plaintiff's rights of private ownership and enjoyment of property, considering the willful and continuing nature of the illegal trespass.
Plaintiff also seeks an increase in the award for each of her expert witnesses from $50 to $100. The trial judge had discretion in this matter and the $50 awards are not so low as to be an abuse of that discretion.
Defendant seeks to have the $75 awarded by the trial court as the cost of plaintiff's survey disallowed. Plaintiff testified as to the cost of the survey and as to the necessity of the survey as a consequence of defendant's trespass. The cost of the survey is a proper item of damages.
For the reasons assigned, the judgment appealed from is affirmed. All costs of this appeal are assessed to the defendant-appellant.
Affirmed.